IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  07-cv-00321-WYD-PAC

BARRY BIALEK,

      Plaintiff,

v.

UNITED STATES ATTORNEY GENERAL ALBERTO R. GONZALES;
FEDERAL ELECTION COMMISSION CHAIRMAN MICHAEL E. TONER,
In their official capacities,

      Defendants.

---

## ORDER

---

      This MATTER is before the Court on Plaintiff's Motion for Declaratory Judgment [#5], filed on March 12, 2007, and the Defendants' respective Motions to Dismiss [## 18, 21], both filed on April 13, 2007.  The Motion for Declaratory Judgment and the Motions to Dismiss turn entirely on the legal question of whether or not the administrative remedy outlined in 2 U.S.C. §437g is a prerequisite to the Attorney General investigating and prosecuting a potential criminal violation of the Federal Election Campaign Act ("FECA" or "the Act").  If the Attorney General has the discretion to prosecute the case without first exhausting the administrative remedy, then Plaintiff has failed to plead any set of facts which would entitle him to relief and Defendants' Motions to Dismiss should be granted.  On the other hand, if the administrative remedy is a prerequisite to the Attorney General's authority to prosecute a violation of the Act, then Defendant's Motion for Declaratory Judgment should be granted.

After a review of the Act, as well as applicable caselaw, I find that the Act does not restrict in any way the Attorney General's authority to investigate and prosecute criminal violations of the Act.  Specifically, I find that the administrative remedy outlined in section 437g Act is not a prerequisite to the Attorney General's enforcement of the criminal provisions in the Act.  Accordingly, I find that Defendants' Motions to Dismiss should be granted.  Below, I will discuss in more detail the reasons for my decision.

I.    BACKGROUND

On February 14, 2007, Plaintiff filed a Complaint asking for Declaratory Relief. The facts, as plead in the Complaint and Plaintiff's subsequent motion, are as follows. At some point in the summer of 2005, a former employee of the Michigan law firm of Fieger, Fieger, Kenney & Johnson, P.C. ("the law firm") contacted the FBI and claimed that the law firm forced him to contribute to the presidential campaign of Senator John Edwards.  In November of 2005, the United States Attorney General executed a nighttime search of the law firm offices as well as the homes of the law firm employees.

Plaintiff is a medical doctor and provided professional consulting services to the law firm.  On or about November 2005, Defendant Gonzalez began an investigation of Plaintiff for alleged violations of the Act.  In April of 2006, Plaintiff was subpoenaed in Colorado to testify and produce documents before a federal grand jury.  In the course of this investigation, the Attorney General questioned Plaintiff about whom he voted for in the last presidential election.  The FEC has never investigated Plaintiff nor has the FEC referred this matter to the Attorney General.

II.   STANDARD OF REVIEW

In ruling on Defendants' Motions to Dismiss, I "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)).  "A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 54 F.3d 488, 490 (10th Cir. 1995)).  If, accepting all well-pleaded allegations as true and drawing all reasonable references in favor of plaintiffs, it appears beyond doubt that no set of facts entitle plaintiffs to relief, then I should grant a motion to dismiss.  *See Tri-Crown, Inc. v. American Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990).

III.   The Federal Election Campaign Act of 1971, as amended

In 1971, Congress enacted FECA to "limit spending in federal election campaigns and to eliminate the actual or perceived pernicious influence over candidates for elective office that wealthy individuals or corporations could achieve by financing the 'political warchests' of those candidates."  *Orloski v. Federal Election Com'n*, 795 F.2d 156, 163 (C.A.D.C. 1986).  Congress also created the Federal Election Commission ("the Commission") to oversee the civil enforcement of the Act's provisions.  2 U.S.C. § 437c.  The Commission is given broad powers to supervise and enforce the Act.  2 U.S.C. § 437d.  The Act provides that "[t]he Commission shall have

exclusive jurisdiction with respect to the civil enforcement of such provisions." 2 U.S.C. § 437c(b)(1).

Despite the granting of broad powers to the FEC, the Act contains provisions which restrict the FEC in its enforcement and investigation of the Act. Initially, the FEC must notify the person complained against and conduct an investigation. 2 U.S.C. § 437g(a)(2). Also, the FEC must not disclose its proceedings without the consent of the person complained against, 2 U.S.C. § 437g(a)(3)(B), and must give that person a reasonable opportunity to show that no action should be taken against him. 2 U.S.C. § 437g(a)(4). Further, if there is reasonable cause to believe a violation has occurred, the Commission must attempt to correct or prevent the violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement. 2 U.S.C. § 437g(a)(4)(A). A conciliation agreement, unless violated, constitutes a complete bar to further action by the Commission, 2 U.S.C. § 437g(a)(5)(A), and may be introduced as mitigating evidence in any criminal action brought by the Attorney General. 2 U.S.C. § 437j(b), (c).

If the Commission is unable to correct the violation informally and determines there is probable cause to believe a violation has occurred, it may institute a civil action. 2 U.S.C. § 437g(a)(5)(B). If the Commission determines that there is probable cause to believe that a "knowing and willful" violation has occurred, then by an affirmative vote of 4 of its members, the Commission may refer the violation to the Attorney General. 2 U.S.C. § 437g(a)(5)(C).

IV.   <u>ANALYSIS</u>

Plaintiff argues that FECA restricts the Attorney General's authority to prosecute a criminal violation of the Act.  Specifically, Plaintiff argues that section 437g is a prerequisite to the Attorney General's authority because the Act grants "[t]he Commission . . . exclusive jurisdiction with respect to the civil enforcement of such provisions," 2 U.S.C. § 437c(b)(1), and because the Act contains a referral provision requiring an affirmative vote of four members of the FEC.  Accordingly, Plaintiff argues that any criminal violation of FECA first be handled by the FEC and "only *after* the FEC opens this jurisdictional door (i.e. *by an affirmative vote of 4 of its members*) the Attorney General may proceed with an investigation (or prosecution) under the Act." (Pl.'s Br. At 8).  For the reasons below, I find Plaintiff's argument to be without merit.

A.   <u>Statutory Interpretation</u>

Plaintiff's interpretation of FECA would create a restriction of the Attorney General's authority.  "In the context of criminal cases, courts have indicated a reluctance to interfere with the government's authority to initiate an investigation and its discretion to proceed with a prosecution."  *U.S. v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998).  In general, the "conduct of federal criminal litigation . . . is an executive function within the exclusive prerogative of the Attorney General."  *United States v. International Union of Operating Engineers, Local 71*, 638 F.2d 1161, 1162 (9th Cir. 1979)(quoting *In re Subpoena of Persico*, 522 F.2d 41, 54 (2nd Cir. 1975)).  Consequently, while Congress may limit or reassign the prosecutorial responsibility,

-5-

there is a recognized "[p]resumption against a congressional intention to limit the power of the Attorney General to prosecute offenses under the criminal laws of the United States." *United States v. International Union of Operating Engineers, Local 71*, 638 F.2d 1161.  Because of the above presumption, "such an exception upon the criminal law would require a clear and unambiguous expression of the legislative will." *U.S. v. Morgan*, 222 U.S. 274 (1911).

Contrary to Plaintiff's argument, I find that there is no language in the Act that evidences a "clear and unambiguous" intent of Congress to restrict the Attorney General's authority.  Plaintiff makes much of the fact that the FECA grants "exclusive" jurisdiction to the FEC.  The provision that grants the FEC "exclusive" jurisdiction, however, specifically refers only to *civil* enforcement of the Act.  2 U.S.C. § 437c(b)(1). By clearly distinguishing between civil and criminal enforcement, I find that this particular provision of the Act does not in any way evidence a Congressional intent to restrict the authority of the Attorney General to act independently of the FEC in the Attorney General's enforcement of the *criminal* provisions of the Act.

There is nothing in the referral provision which restricts the Attorney General in any way.  This provision only mandates the manner in which the Commission must refer a case to the Attorney General.  While the referral provision does explicitly limit the Federal Election Commission–allowing a referral only after an affirmative vote of four FEC members–nothing in the referral provisions would purport to require that the Attorney General can only prosecute a violation of the Act after a vote and subsequent referral by the FEC.

-6-

Interpreting a prior version of the Federal Campaign Finance Act, the Ninth Circuit Court of Appeals reached the same conclusion.  The court held that "nothing in these provisions suggests, much less clearly unambiguously states, that action by the Department of Justice to prosecute a violation of the Act is conditioned upon prior consideration of the alleged violation by the FEC."  *United States v. International Union of Operating Engineers, Local 701*, 638 F.2d at 1163.  In *International Union*, the Court held that Congress did not intend to impose a limitation on the Attorney General's ability to prosecute violations of the Federal Campaign Finance Act by allowing the Federal Election Committee to refer violations to the Attorney General.  *Id.* at 1161. Specifically, the Court held that "the fact that the FEC may refer certain complaints to the Department of Justice for prosecution, after administrative processing. . . does not in itself imply that administrative processing and referral are prerequisite to the initiation of litigation by the Attorney General."  *Id.*  Other courts have reached the same conclusion.  *See U.S. v. Jackson*, 433 F.Supp. 239, 241 (D.C.N.Y. 1977)("These procedural safeguards are pertinent to civil investigations which my be undertaken by the Commission and do not apply to or bind the Attorney General in conducting criminal investigations."); *U.S. v. Tonry*, 433 F.Supp. 620, 623 (D.C.La. 1977)("At no place in the statute is specific provision made prohibiting the Attorney General from going forward with criminal investigation without a referral by the Commission.  In the absence of such a specific provision the general authority of the Attorney General to proceed cannot be limited.")

Plaintiff argues that Congress repudiated the ruling in *International Union of Operating Engineers, Local 71*, 638 F.2d 1161, by amending the Act in 1980.  While Plaintiff identifies two changes to the Act, neither of these changes supportd Plaintiff's argument that the Act creates a restriction on the Attorney General's authority to prosecute a violation of the Act.  The first change was an addition to the referral provision.  Before 1980, the referral provision in the Act read "if the Commission determines that there is probable cause . . . ."  2 U.S.C. § 450g(a)(5)(D).  After 1980, the Act was amended to include "if the Commission *by an affirmative vote of 4 of its members*, determines that there is probable cause . . . ."  2 U.S.C. § 450g(a)(5)(C).  Plaintiff argues that the "very purpose and essence of requiring 'an affirmative vote of 4' members in order to refer a matter for criminal prosecution would be rendered meaningless if the Attorney General could just simply step in and say, 'oh well, since they don't have the bipartisan support of a majority of the Commission we'll issue an indictment ourselves.'" (Pl.'s Br. At 12).

Plaintiff's argument fails to recognize that there is a fundamental difference between limiting the FEC and limiting the Attorney General.  While Congress may have felt a need to restrict the authority of the FEC "to assure that enforcement actions . . . will be the product of mature and considered judgment," 638 F.2d at 1164, this does not automatically signal that Congress had a similar concern with the Department of Justice.  The court in *Internation Union* also recognized the difference between a congressional restriction of the FEC and of the Attorney General.  The court reasoned that "[t]he statutory provisions do contain numerous restrictions apparently designed to

-8-

minimize the risk that the administrative process might be used unfairly; these restrictions are not aimed at the Attorney General, however, but at complainants to the FEC and the FEC itself."   638 F.2d at 1164.

The second change in the Act which Plaintiff identifies is the amendment of the Act to include the following: "any defendant may evidence their lack of knowledge or intent to commit the alleged violation by introducing as evidence a conciliation agreement entered into between the defendant and the Commission." 2 U.S.C. § 437g(d)(2).  As explained above, the Act mandates that the FEC engage in informal methods and attempt to reach a conciliation agreement.  2 U.S.C. § 437g(a)(4)(A). Plaintiff argues that allowing a conciliation agreement to be introduced as evidence in a criminal case "clearly demonstrates Congress's intent to establish a sequence of events under which the FEC *first* attempts to resolve alleged violations *prior* to a referral to the Attorney General."  (Pl.'s Br. At 10.)  I disagree.

There is nothing in the plain language of the Act that requires the FEC to undergo the informal methods–including an attempt at reaching a conciliation agreement–prior to referring the matter to the Attorney General.  Interpreting a prior version of the Act, the Court in *U.S. v. Jackson*, 433 F.Supp. 239 (D.C.N.Y. 1977), reached the same conclusion.  In *Jackson*, the Court recognized that "Where. . . the Commission has determined that there is probable cause to believe that knowing or willful violations of 26 U.S.C. § 9042(c) have occurred, it may refer such apparent violations to the Attorney General without making any conciliation efforts."  433 F.Supp. at 241.  Accordingly, contrary to Plaintiff's argument, the Act does not require that the

-9-

Commission first attempt to resolve an alleged civil violation by informal methods before the Attorney General can investigate or prosecute a criminal violation of the Act.

C.   Legislative History

Further, Plaintiff argues that the legislative history of FECA supports a showing that Congress intended a referral by the FEC to be a prerequisite to the Attorney General's ability to prosecute a violation of the Act. As support for this argument, Plaintiff cites to Senator Brock's statement. Senator Brock testified as follows:

> Equally bad, the Justice Department is no longer able to prosecute on its own. If an aggressive district attorney finds a clear violation of the law, he cannot take the person into court. He must refer the case to the Federal Election Commission. And what if this agency, which Congress has neatly overtaken, imposes nothing but a simple fine? That is it. The Justice Department can take no further action even if it violently disagrees with the decision.

122 Cong.Rec.S. 12471 (1976). The court in *International Union* also recognized Senator Brock's statement. However, that court emphasized that "Senator Brock was a leading Senate opponent of the legislation. . ." and that ". . . [h]is characterization of the legislation is thereby entitled to little weight." *Id.* at 1168. I, too, find that a single statement from an opponent of the Act is not indicative of Congressional intent to limit the prosecutorial authority of the Attorney General.

Moreover, there is legislative history which supports a conclusion that the Act did not restrict the Attorney General's authority to prosecute violations of the Act. Senator Cannon stated that:

> The bill would grant the exclusive civil enforcement of the act to the Commission to avoid confusion and overlapping with the Department of Justice, but at the

-10-

same time, *retain the jurisdiction of the Department of Justice* for the criminal prosecution of any violations of this act.

94 Cong. Rec. S3860-61 (daily ed. March 22, 1976)(statement of Sen. Cannon).

IV.   <u>CONCLUSION</u>

In sum, I find that neither the plain language of the statute nor the legislative history supports a conclusion that Congress intended to limit the Attorney General's authority to prosecute criminal violations of the Federal Election Campaign Act.

For the aforementioned reasons, It is

ORDERED that the Defendants' Motions to Dismiss [## 18, 21] are **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**, each party to pay their own costs and attorney's fees.

Dated:  June 28, 2007

BY THE COURT:


<u>s/ Wiley Y. Daniel</u>
Wiley Y. Daniel
U. S. District Judge

-11-